UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF APPLICATION OF ELEANOR DE LEON. | Case No. 19-mc-80296-DMR<br><br>**ORDER ON EX PARTE APPLICATION FOR ISSUANCE OF AN ORDER UNDER 28 U.S.C. § 1782**<br><br>Re: Dkt. Nos. 1, 4 |

Petitioner Eleanor de Leon filed an ex parte application seeking permission to issue subpoenas pursuant to 28 U.S.C. § 1782 to obtain discovery for use in foreign proceedings. [Docket Nos. 1, 4.] Having considered the papers and the relevant legal authority, the court grants the application.

## I. BACKGROUND

Petitioner Eleanor de Leon is a U.S. citizen and the widow of the late Sheikh Osama Ismail Abudawood ("Sheikh Osama"), a citizen of Saudi Arabia who died in 2017. [Docket Nos. 2 (de Leon Decl., Sept. 30, 2019) ¶ 2; 3 (Hammad Decl., Nov. 5, 2019) ¶ 4.] De Leon filed this application seeking discovery in aid of foreign proceedings regarding the distribution of Sheikh Osama's estate in Saudi Arabia. Sheikh Osama died intestate and his estate is being administered in accordance with the Islamic Sharia Rules and Regulations of the Kingdom of Saudi Arabia ("Sharia law"). According to Petitioner, under Sharia law, de Leon and AA, her daughter with Sheikh Osama, are entitled to 12.5% and 11.805% shares of Sheikh Osama's estate, respectively. Hammad Decl. ¶¶ 10, 11; de Leon Decl. ¶ 2.

De Leon avers that prior to his death, Sheikh Osama was an owner and director of "a group of companies within a business conglomerate referred to generally as the Abudawood Group," a multi-billion dollar enterprise, along with his brothers Sheikh Anas and Sheikh Ayman. *Id*. at ¶¶

6- 8. Sheikh Anas and Sheikh Ayman "continue to be involved in the management and operation of the Abudawood Group." *Id*. at ¶ 8. The Abudawood Group provides "market brand development, manufacturing, and distribution of consumer products in Saudi Arabia and the Middle East, primarily for Procter & Gamble ('P&G') and Clorox products." One of the Abudawood Group's companies, Al Wafra International Company for Industrial Investments Limited ("Al Wafra"), has joint ventures with Clorox to manufacture and sell Clorox products in the region. *Id*. at ¶¶ 6, 7, 9. These joint ventures are Mohammed Ali Abudawood & Partners for Industry Company Limited ("Abudawood & Partners") and National Cleaning Products Company Limited ("National Cleaning"). Sheikh Osama's ownership interests in Al Wafra and the joint ventures with Clorox "are among the most significant assets of his estate." *Id*. at ¶ 9.

De Leon further explains that there are currently 11 actions pending in Saudi courts regarding the disposition of the estate, including the division of accounts owned jointly by Sheikh Osama and his brothers for the benefit of the Abudawood Group (the "Saudi actions"). *Id*. at ¶ 13. The Abudawood Group or its affiliates brought nine of the actions "seek[ing] the . . . determination of the nature and interests of Sheikh Osama's heirs," including de Leon and AA, in the corporate entities. According to de Leon, the plaintiffs in those actions seek "to amend the articles of association to force Sheikh Osama's heirs to accept ownership of their proportionate shares in the corporations, and to transfer legal ownership of the shares to each of the heirs." *Id*. De Leon and AA are defendants in those actions and object to the requested relief; they seek a buyout of their inherited interests in the companies. *Id*. at ¶¶ 14, 15. The Commercial Court in Jeddah, Saudi Arabia is overseeing de Leon and AA's claims to a buyout and a valuation of the Abudawood Group companies and assets. *Id*. at ¶ 14.

In August 2019, the Saudi Commercial Court appointed a valuator to value Sheikh Osama's interests in the Abudawood Group companies at issue in the Saudi actions, including the joint ventures with Clorox. *Id*. at ¶ 19, Ex. F. De Leon and AA have made multiple requests to the Abudawood Group for documents and information related to the corporate and ownership structure and financial performance of the joint ventures between the Abudawood Group and Clorox. To date, the Abudawood Group has refused to provide this information to de Leon and

AA. *Id*. at ¶¶ 20, 21. De Leon asserts that this information is necessary to "determining and understanding the fair value of Sheikh Osama's interest in [Abudawood & Partners and National Cleaning] and, therefore, determining and understanding the fair value of [her] and AA's inherited interest therein." *Id*. at ¶ 21. Additionally, de Leon argues that corporate and financial information regarding the joint ventures "is essential to understand the legal and capitalization requirements to admit [her], a non-Saudi citizen, into the Abudawood Group companies" in the event she does not obtain a buyout of her interests. *Id*. at ¶ 22.

De Leon now seeks leave to serve two subpoenas on the Clorox Company seeking corporate and financial information for the joint ventures between the Abudawood Group and Clorox, asserting that she has "no choice but to request [the information] directly from Clorox" in light of "the Abudawood Group's failure and refusal to provide the requested information on numerous occasions[.]" *Id*. at 22. De Leon's proposed subpoena for documents contains 101 requests for production of documents ("RFPs"). She also seeks leave to serve a subpoena for a Federal Rule of Civil Procedure 30(b)(6) deposition of the Clorox Company for examination on 46 topics. [Docket No. 1 (Application) Exs. 1, 2.]

## II. LEGAL STANDARD

De Leon seeks discovery pursuant to 28 U.S.C. § 1782, which states as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign

3

1  countries by example to provide similar means of assistance to our courts" (citation and quotations
2  omitted)).

A district court is authorized to grant a section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246-47; *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010).

"However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (citing *Intel*, 542 U.S. at 264). The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

## III. DISCUSSION

### A. Authority to Issue Subpoena

The court has reviewed de Leon's request and determines that the statutory requirements of section 1782 have been satisfied. First, the Clorox Company's headquarters are in Oakland, California, which is in this district. Second, the requested discovery is for use in proceedings pending in the Saudi Commercial Court, a foreign tribunal. Finally, de Leon qualifies as an "interested person" because there is "[n]o doubt that litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. De Leon is a defendant in the Saudi actions, which makes her a litigant and clearly an "interested person" within the meaning of section 1782.

4

**B.     Discretionary Factors**

Having concluded that it has the authority to issue the subpoenas, the court turns to the question of whether the four discretionary factors identified by the Supreme Court weigh in favor of or against issuance of the subpoena.

With respect to the first discretionary factor, the Supreme Court has noted that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264 (internal quotations and citations omitted). Here, the Clorox Company is not a party to the Saudi actions. *See* Hammad Decl. ¶¶ 15, 24. Thus, the first factor weighs in de Leon's favor.

The second factor examines the nature and receptivity of the foreign tribunal. De Leon presents the declaration of an attorney who practices in Saudi Arabia who opines that the court-appointed valuator "will receive, accept, and consider the documents and information obtained from Clorox . . . and will consider the documents and information in assessing the value of Sheikh Osama's estate and Ms. de Leon's and AA's inherited interest therein." Hammad Decl. ¶ 23. He also states that in his opinion and professional experience, "the Saudi court will consider the valuation provided to it by the valuator in determining the fair value of Ms. de Leon and AA's inherited interests from Sheikh Osama's estate[.]" *Id*. This factor weighs in favor of de Leon.

With respect to the third factor, there is nothing to suggest that de Leon is attempting to circumvent foreign proof-gathering restrictions. This factor therefore weighs in favor of de Leon.

The fourth factor examines whether the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). Here, de Leon's proposed document subpoena seeks the

production of 101 categories of documents. RFPs 1through 62 seek corporate and financial information related to Al Wafra, Abudawood & Partners, and National Cleaning, as well as agreements between those entities, the Abudawood Group, and Clorox. Most are temporally limited, seeking information from January 1, 2012, five years before Sheikh Osama's death, to the present. RFPs 63 through 101 seek various categories of communications between Clorox and the individuals and entities at issue in the Saudi actions. Similarly, the topics for examination in the proposed 30(b)(6) subpoena generally relate to corporate and financial information for Abudawood & Partners and National Cleaning and any other Clorox/Abudawood Group joint ventures. On their face, the RFPs and topics for examination generally do not appear to be unduly burdensome or untailored. These findings do not preclude the Clorox Company from contesting the subpoenas. The Ninth Circuit has held that applications for subpoenas pursuant to section 1782 may be filed ex parte because "[t]he witnesses can . . . raise[ ] objections and exercise[ ] their due process rights by motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976).

Finally, the court notes that Abudawood & Partners and National Cleaning filed a motion to intervene in order to oppose de Leon's ex parte application. [Docket No. 10.] In their motion, they assert that they "have standing to challenge Ms. de Leon's § 1782 request" as they are adverse to de Leon in multiple actions and she seeks to obtain information pursuant to section 1782 to use against them in those actions. *Id*. at 10-11. However, the cases they cite in support of intervention address the issue of standing to challenge the validity of a subpoena issued pursuant to section 1782; that is, *after* a 1782 application is granted and a subpoena issues. *See In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada*, 523 F.2d 562, 564 (6th Cir. 1975) ("a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of the applicable statute"); *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) ("We have recognized, though implicitly, that parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties."); *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("A person

. . . against whom information obtained undersection 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused." (citations omitted)). None support the precise relief the proposed intervenors request here, which is leave to intervene to oppose the issuance of an order granting a 1782 application. Therefore, the proposed intervenors' motion is denied without prejudice as premature and their motion to strike de Leon's reply brief (Docket No. 16) is denied as moot. Any party shall have 21 calendar days after the service of the subpoenas to contest them. The return date on the subpoenas must be set at least 21 days after service. De Leon may file a response to any motion challenging the subpoenas 14 days after service of such a motion, and any reply briefs are due seven days later. The court will set the matter for a hearing or take it under submission.

## IV. CONCLUSION

For the foregoing reasons, the court grants de Leon's application. De Leon may serve the subpoenas attached as Exhibits 1 and 2 to the application.

**IT IS SO ORDERED.**

Dated: April 10, 2020



_____
Donna M. Ryu
United States Magistrate Judge

7