# EXHIBIT D

| | |
|---|---|
| **From:** | Pinney, John B. |
| **To:** | Holscher, Mark C. |
| **Cc:** | Allouch, Roula; Ekwan E. Rhow (erhow@birdmarella.com); "Oliver Rocos"; Margaret S. Ng (mng@garrettllp.com); Pilmer, R. Alexander; Korevec, John Christopher |
| **Subject:** | RE: Clorox Subpoenas [IWOV-CN.FID629806] |
| **Date:** | Sunday, May 3, 2020 5:56:44 PM |
| **Attachments:** | P&G Protective Order.pdf |
| | Protective Order (MSN Rev. in track changes) (10723683-2xA2799).doc |



Mark:

I received your message below late Friday.  I am writing now on only two points: (1) to inform you that Ms. de Leon believes it appropriate that Clorox proceed with any motion practice with the court in Oakland and that Clorox therefore proceed to file any motion it deems necessary tomorrow as was required by Judge Ryu's prior order; and (2) to respond to your request for a Word version of the P&G protective order.  I'll respond substantively to your other points, hopefully tomorrow.  However, I wanted to make sure you knew that, given the points you raise, it seems to me that we have a long road ahead to come to an amicable agreement that will not require the court's involvement, which suggests that any delay in addressing the merits of the discovery requests is not appropriate.  Nonetheless, I can assure you that I will work with you in good faith to try to reach agreement.

I sense that your message below was written primarily on behalf of your client, Clorox, and not for, at least not directly for, your Abudawood clients, as is implied by your statement: "My client [presumably Clorox] has no interest in being pulled comment into a wider conflict between your client [i.e., Ms. de Leon] and the Abudawood Group or anyone else."  Unless you advise me differently, my assumption is that you nonetheless are continuing with your representation of the Abudawood entities as well as Clorox.  If that assumption is incorrect, please advise me right away.

Regarding the second matter mentioned above, I am attaching both the protective order as entered in the Cincinnati case by Magistrate Judge Bowman and a word version of the proposed order as submitted to the court by Mr. Kane and me.  Ms. de Leon is willing to join in a protective order in the Clorox case in the same form as was entered with Procter & Gamble.

I will be responding further to the substantive points in your message below as soon as possible.

Regards,
John



**JOHN B. PINNEY**
Attorney
jpinney@graydon.law

Direct      513.629.2730
Mobile      513.484.2730

312 Walnut Street
Suite 1800

| Cincinnati, OH 45202 | Fax | 513.333.4324 |

The preceding information is from the law firm of Graydon Head & Ritchey LLP and may be protected by attorney/client privilege. If you believe it has been sent to you in error, do not read it. Please reply to the sender that you have received the message in error, then delete the message. Do not retain a copy. Thank you.

---

**From:** Holscher, Mark C. [mailto:mholscher@kirkland.com]
**Sent:** Friday, May 01, 2020 10:05 PM
**To:** Pinney, John B.
**Cc:** Allouch, Roula; Ekwan E. Rhow (erhow@birdmarella.com); 'Oliver Rocos'; Margaret S. Ng (mng@garrettllp.com); Pilmer, R. Alexander; Korevec, John Christopher
**Subject:** RE: Clorox Subpoenas [IWOV-CN.FID629806]

*** External email - use caution ***

John,

Thanks for your note. As mentioned in my last email, and as discussed on our call, my client remains ready and willing to continue to engage with you and your client to hopefully come to a resolution concerning Ms. de Leon's discovery requests absent litigation. My client also remains ready and willing to conduct a good faith investigation concerning the burden of particular requests in order to facilitate this dialog. We agree that the obvious burden of responding meaningfully to 147 discovery requests is one of the key areas I hope we can sort out over the coming days.

As an initial matter, one point of immediate agreement is your acknowledgment that a protective order is needed and appropriate before Clorox proceeds with any productions. I also agree that the protective order recently issued in the Cincinnati proceedings between Ms. de Leon and P&G is likely a good starting point. If possible, please send us a Word version of your proposed protective order, and we will be happy to review and send back a redline for your consideration.

One preliminary point of disagreement, however, is your position that our discussions be limited to burden, and not the scope of the subpoenas as well. We believe these concepts are interrelated. Conducting a meaningful burden investigation concerning 147 separate discovery requests is itself excessively burdensome--particularly in the context of a third party subpoena. Further, as a practical matter, Ms. de Leon is not entitled to discovery that is irrelevant--regardless of the burden on my client to produce such information.

Based on our call earlier this week, it is my understanding that your client would like to complete this process as quickly as possible. Again, I believe this is another area where our clients' interests are aligned. However, conducting an individualized burden analysis of 147 separate discovery requests will significantly delay this process. Many of Ms. de Leon's requests are not even limited by date (Clorox's relationship with the relevant entities dates back to the 1960s), and many involve entities that my client does not even own any interest in (making the odds of locating any responsive documents nil). Further, many of the discovery requests explicitly ask for information concerning lawsuits and compliance concerns that have nothing to do with Clorox. My client has no interest in being pulled into a wider conflict between your client and the Abudawood Group or anyone else.

Also, while we disagree with your substantive point concerning the scope of the control rule as it relates to your ability to demand documents from subsidiaries anywhere in the world (especially in the context of a Section 1782 petition, but even under Rule 45), another point of consideration is that engaging in the type of global investigation that you are suggesting would significantly delay the ability of my client to locate, collect, review, and produce documents to your client.

With this in mind, I think the best way to move forward productively would be for the parties to begin our discussions from a reasonable starting point.  This would include:

1. Providing reasonable time limitations on all requests--Clorox's relationship to the relevant entities dates back to the 1960s, and historical documents spanning six decades would not provide much assistance to determining a 2017 day-of-death valuation;
2. Taking off the table discovery requests that have no relationship to the underlying Saudi proceedings, or to Clorox, such as those relating to the Central District of California action;
3. Limiting the subpoenas to those requests actually involving Abudawood & Partners and National Cleaning (the two entities Clorox actually owns an interest in--albeit through separate legal entities, who themselves are only passive, minority interest holders); and
4. Limiting productions to those documents that are stored in centralized locations, and readily accessible to Clorox in Oakland, California.

Once we get the universe down to a reasonable set of discovery requests, my client can more realistically begin its burden diligence.

I also wanted to follow up on my request from my last email that your client reconsider her position declining my client's request for an extension of time to file its Motion to Quash, which is currently due this coming Monday.  While my client is prepared to file on Monday if necessary, to the extent possible, we would prefer to resolve this without burdening the court with potentially unnecessary motions practice--particularly in light of current court access issues resulting from the COVID-19 restrictions. We want to avoid a scenario where we engage in months of litigation only for the court to decide that the parties should again recommence the meet and confer process.  We believe it would be beneficial for both parties to engage in those meet and confers now, rather than expending significant time and resources on an unnecessary, litigated approach.

Best regards,

Mark

**Mark Holscher**
=================================================
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Los Angeles, CA 90071
**T** +1 213 680 8190  **M** +1 310 739 2459

F +1 213 680 8500

-------------------------------------------------

mark.holscher@kirkland.com


**From:** Pinney, John B. <JPinney@Graydon.law>
**Sent:** Wednesday, April 29, 2020 5:47 PM
**To:** Holscher, Mark C. <mholscher@kirkland.com>
**Cc:** Allouch, Roula <RAllouch@Graydon.law>; Ekwan E. Rhow (erhow@birdmarella.com) <erhow@birdmarella.com>; 'Oliver Rocos' <orocos@birdmarella.com>; Margaret S. Ng (mng@garrettllp.com) <mng@garrettllp.com>
**Subject:** Clorox Subpoenas [IWOV-CN.FID629806]

Dear Mark:

This is to respond to your message from late yesterday, suggesting that you and I might engage as I had suggested with my two letters to Ms. Stein, Clorox's GC.  My distinct sense is that to provide the foundation upon which any agreement follow, it will be necessary for us to focus mainly on the issue of burden for Clorox to produce the documents described in the subpoenas, and not scope of the subpoenas.

In order to do so, I suggest that you (or your associated in-house counsel at Clorox) must first to determine and then share with me the following: (a) what specific evidence within the current  scope of the subpoena is readily available electronically, (b) what is not easily available electronically (with an explanation why), (c) what evidence may only exist in hard copy form (including where it is physically located), and (d) if any particular evidence does not now exist, why doesn't exist and what, if anything, has occurred with respect to it if it is believed to have previously existed but is no longer available, with or without examination of back-up files.

Once those questions are answered, we then can move to address the degree of burden for producing the particular categories of evidence described in the subpoenas.  Those categories in may be defined in the following broad general areas:
1. Entity related documents for Abudawood & Partners, National Cleaning, Al Wafra and other Abudawood related entities.
2.  Lists or charts depicting subsidiaries, joint ventures and investments of Abudawood & Partners, National Cleaning, Al Wafra and other Abudawood related entities.
3.  Financial statements, projections, budgets, forecasts and business plans of Abudawood & Partners, National Cleaning, Al Wafra and other Abudawood related entities.
4.  Tax returns of Abudawood & Partners, National Cleaning, Al Wafra and other Abudawood related entities.
5. Tax returns related to Sheikh Osama or his estate. Abudawood & Partners, National Cleaning, Al Wafra and other Abudawood related entities.
6. Communications, presumably mainly emails and attachments, between Clorox and Abudawood-related persons or entities, including Sheikh Osama, Sheikh Anas, Sheikh Ayman, Abudawood-related persons or Jeffrey Trinklein or other Gibson Dunn lawyers.

From Petitioner's perspective, the degree of burden on Clorox to produce the requested evidence ought to be the paramount matter of concern. In other words, if evidence is readily available by the click of a mouse from Oakland, the burden is minimal and there is little reason to withhold it. However, if the burden, including cost, is great then the degree of relevance for particular categories of evidence then becomes an important issue. In that situation, Petitioner is willing to engage in good faith to achieve the appropriate balance between relevance and cost.

As I am sure you know and would expect that your Clorox colleagues are aware, Petitioner's subpoenas require production of evidence wherever in the world it may be located as long as it is within the possession, custody, or control of Clorox, which includes all Clorox subsidiaries worldwide.

There is one other area for potential discussion and agreement. Petitioner recognizes that the interests of all parties suggest that a protective order is needed and appropriate. Because you are also counsel in the Cincinnati proceedings, I suggest we discuss an agreement to submit to Judge Ryu a proposed protective order similar to that which was entered by Judge Bowman in Cincinnati.

I have good availability both tomorrow and Friday in the event that you wish to discuss either the content of this message or begin substantive discussions on the scope and burden of the subpoenas. Let me know how your clients wish to take these discussions forward.

Regards,
John



**JOHN B. PINNEY**
Attorney
**jpinney@graydon.law**

| | |
|---|---|
| Direct | 513.629.2730 |
| Mobile | 513.484.2730 |
| Fax | 513.333.4324 |

312 Walnut Street
Suite 1800
Cincinnati, OH 45202

The preceding information is from the law firm of Graydon Head & Ritchey LLP and may be protected by attorney/client privilege. If you believe it has been sent to you in error, do not read it. Please reply to the sender that you have received the message in error, then delete the message. Do not retain a copy. Thank you.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.