UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEANOR DE LEON, | Case No. 19-mc-80296-DMR |
| Petitioner, | **ORDER ON MOTION TO VACATE ORDER GRANTING 28 U.S.C. § 1782 APPLICATION, MOTION TO INTERVENE, AND MOTION TO QUASH SUBPOENAS** |
| v. | |
| THE CLOROX COMPANY, | |
| Respondent. | Re: Dkt. Nos. 31, 33 |

Petitioner Eleanor de Leon filed an ex parte application seeking discovery pursuant to 28 U.S.C. § 1782 from Respondent the Clorox Company ("Clorox") to obtain evidence for use in legal proceedings in Saudi Arabia. On April 10, 2020, the court granted de Leon's section 1782 application and authorized issuance of document and deposition subpoenas to Clorox. [Docket No. 24.] Clorox now moves pursuant to 28 U.S.C. § 1782 and Federal Rule of Civil Procedure 45 to quash the two subpoenas issued by de Leon pursuant to the court's order. [Docket No. 31.]

Proposed Intervenors Mohamad Ali Abudawood & Partners for Industry Company ("Abudawood & Partners") and National Cleaning Products Company ("National Cleaning") separately seek leave to intervene for the purpose of moving to vacate the order authorizing discovery and quash the subpoenas issued to Clorox. [Docket No. 33.]

This matter is appropriate for disposition without oral argument and the August 13, 2020 hearing is vacated. For the following reasons, the motion to intervene is granted in part. The motions to vacate are denied. The Intervenor's motion to quash is denied as moot. Clorox's motion to quash is denied without prejudice, subject to Clorox's filing of additional facts and the parties' engagement in further discussions as ordered below.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Eleanor de Leon is a U.S. citizen and the widow of the late Sheikh Osama Ismail

Abudawood ("Sheikh Osama"), a citizen of Saudi Arabia who died in 2017. [Docket Nos. 2 (de Leon Decl., Sept. 30, 2019) ¶ 2; 3 (Hammad Decl., Nov. 5, 2019) ¶ 4.] De Leon filed this application seeking discovery in aid of foreign proceedings regarding the distribution of Sheikh Osama's estate in Saudi Arabia. Sheikh Osama's estate is being administered in accordance with the Islamic Sharia Rules and Regulations of the Kingdom of Saudi Arabia ("Sharia law"). Under Sharia law, de Leon and AA, her daughter with Sheikh Osama, are entitled to certain shares of Sheikh Osama's estate. Hammad Decl. ¶¶ 10, 11; de Leon Decl. ¶ 2.

De Leon avers that prior to his death, Sheikh Osama was an owner and director, along with his brothers Sheikh Anas and Sheikh Ayman, of a multi-billion dollar "group of companies within a business conglomerate referred to generally as the Abudawood Group." Hammad Decl. ¶¶ 6-8. The Abudawood Group provides "market brand development, manufacturing, and distribution of consumer products in Saudi Arabia and the Middle East, primarily for Procter & Gamble ('P&G') and Clorox products." One of the Abudawood Group's companies, Al Wafra International Company for Industrial Investments Limited ("Al Wafra"), has joint ventures with Clorox to manufacture and sell Clorox products in the region. *Id*. at ¶¶ 6, 7, 9. These joint ventures are Proposed Intervenors Abudawood & Partners and National Cleaning. Sheikh Osama's ownership interests in Al Wafra and the joint ventures with Clorox are significant assets of his estate. *Id*. at ¶ 9.

At the time of de Leon's section 1782 application, there were 11 actions pending in Saudi courts regarding the disposition of the estate, including the division of accounts owned jointly by Sheikh Osama and his brothers for the benefit of the Abudawood Group (the "Saudi actions"). *Id*. at ¶ 13. The Abudawood Group or its affiliates brought nine of the actions "seek[ing] the . . . determination of the nature and interests of Sheikh Osama's heirs," including de Leon and AA, in the corporate entities. De Leon contends that the plaintiffs in those actions seek "to force Sheikh Osama's heirs to accept ownership of their proportionate shares in the corporations, and to transfer legal ownership of the shares to each of the heirs." *Id*. De Leon and AA are defendants in those actions and object to the requested relief; they seek a buyout of their inherited interests in the companies. *Id*. at ¶¶ 14, 15. The Commercial Court in Jeddah, Saudi Arabia is overseeing de

United States District Court
Northern District of California

2

1  Leon and AA's claims to a buyout and a valuation of the Abudawood Group companies and

2  assets.  *Id.* at ¶ 14.

3  In August 2019, the Saudi Commercial Court appointed Deloitte to value Sheikh Osama's

4  interests in the Abudawood Group companies at issue in the Saudi actions, including the joint

5  ventures with Clorox.  Hammad Decl. ¶ 19, Ex. F.  According to de Leon, despite multiple

6  requests, the Abudawood Group has refused to provide her and AA with documents and

7  information related to the corporate and ownership structure and financial performance of the joint

8  ventures between the Abudawood Group and Clorox.  *Id.* at ¶¶ 20, 21.  De Leon asserts that

9  objective evidence of the value of companies in which she and her daughter have ownership

10 interests is necessary to determining the "fair value" of each of their inherited interests in the joint

11 ventures.  *Id.* at ¶ 21.  Additionally, de Leon argues that corporate and financial information

12 regarding the joint ventures "is essential to understand the legal and capitalization requirements to

13 admit [her], a non-Saudi citizen, into the Abudawood Group companies" in the event she does not

14 obtain a buyout of her interests.  *Id.* at ¶ 22.

15 De Leon sought leave to serve two subpoenas on Clorox, which is headquartered in this

16 district, seeking corporate and financial information for the joint ventures between the Abudawood

17 Group and Clorox.  Abudawood & Partners and National Cleaning moved to intervene to oppose

18 the ex parte application.  [Docket No. 10.]  On April 10, 2020, the court granted de Leon's section

19 1782 application and denied the motion to intervene without prejudice as premature.  *Matter of De

20 Leon*, No. 19-mc-80296 DMR, 2020 WL 1820683 (N.D. Cal. Apr. 10, 2020).  The order permitted

21 Clorox to contest the subpoenas by filing a motion to quash.  *Id.* at *3.  De Leon served the

22 subpoenas on Clorox on April 13, 2020.  [*See* Docket Nos. 25 (Subpoena for Documents), 26

23 (Subpoena for Deposition).]

24 Clorox now moves to quash de Leon's subpoenas pursuant to section 1782 and Rule 45.

25 [Docket No. 31 (Clorox's Mot.).]  Proposed Intervenors Abudawood & Partners and National

26 Cleaning separately seek leave to intervene for the purpose of moving to vacate the order

27 authorizing discovery and quash the subpoenas issued to Clorox.  [Docket No. 33 (Intervenors'

28 Mot.).]

On June 17, 2020, the court issued an order setting a hearing on the motions. [Docket No. 40.] In its order, the court noted that in the event that the court denies the motions to vacate and to quash, it must then decide whether de Leon's subpoenas "are appropriately tailored and may be enforced in whole or in part." *Id.* The court found that it was appropriate and efficient to require de Leon and Clorox to meet and confer about the scope of the subpoenas in advance of the hearing in order to eliminate or narrow their disputes if the subpoenas are deemed enforceable. Accordingly, the court ordered de Leon and Clorox to meet and confer regarding the subpoenas and to submit a joint letter by July 9, 2020 setting forth their best and final proposed compromise for each disputed category or request. *Id.* The parties timely filed the joint letter. [Docket No. 43 (Jt. Letter).]

On July 2, 2020, after the briefing on the motions was complete, the Commercial Court in Jeddah, Saudi Arabia issued its final judgment. [Docket No. 44 (Statement of Recent Decision) Exs. A (judgment), B (English translation of judgment).] De Leon submits a declaration by her attorney in the Saudi actions, Dr. Adli Hammad, in which he states that the Commercial Court affirmed the buyout requested by de Leon and AA and ruled that the value of the buyout will be determined by a separate lawsuit. [Docket No. 44-1 (Hammad Decl., July 13, 2020, "2d Hammad Decl.") ¶¶ 3, 5.] He also states that de Leon and AA have the right under Saudi law to appeal from the judgment and will appeal. On appeal, de Leon and AA may enter "new evidence, if such evidence is material to the claim itself." *Id.* at ¶¶ 6, 7. If the appeal is accepted, it "shall revisit the valuation provided by the expert," and if the evidence is deemed admissible, "then the valuation may be amended to reflect the actual value of the shares." *Id.* at ¶ 8. Dr. Hammad states that if the appeal is not accepted, "a new lawsuit shall be filed to determine the value of the shares in question[,] [c]hallenging the accuracy of the valuation provided and requesting the appointment of a new expert." *Id.* According to Dr. Hammad, the "time table for the procedures of filing the appeal and any subsequent lawsuit; and their respective judgements to be rendered, may take upwards [of] a year." *Id.* at ¶ 10.

4

United States District Court
Northern District of California

## II.    LEGAL STANDARDS

### A.    Discovery Pursuant to 28 U.S.C. § 1782

28 U.S.C. § 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The language of section 1782 permits district courts to authorize discovery "where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting § 1782(a)).

"However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so."  *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010) (citing *Intel*, 542 U.S. at 264).  The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.

**B.     Motion to Quash**

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena.  Fed. R. Civ. P. 45.  The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b).  Advisory Committee Notes to 1970 Amendment; Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b).").  Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*  "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).

Rule 45 provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  "Of course, if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'"  *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)).  "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."  *Gonzales*, 234 F.R.D. at 680 (citation omitted).  The party who moves to quash a subpoena bears the "burden of persuasion" under Rule 45(c)(3).  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted).

6

### III.    DISCUSSION

#### A.  Motion to Intervene

As an initial matter, Proposed Intervenors seek leave to intervene to challenge the court's April 10, 2020 order granting de Leon's section 1782 application and to quash the subpoenas to Clorox.

Federal Rule of Civil Procedure 24(b) permits intervention in an action when a prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  In exercising its discretion to permit intervention, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  Further, "the ultimate targets of a § 1782 discovery order issued to third parties have 'standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute.'" *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (quoting *In re Letter Rogatory from Justice Court, Montreal*, 523 F.2d 562, 564 (6th Cir. 1975)).  Courts in this district have granted permissive intervention under Rule 24(b) in section 1782 litigation to prospective intervenors where their "conduct is at the center of" the foreign litigation at issue.  *See*, *e.g., In re Ambercroft Trading Limited*, No. 18-mc-80074-KAW, 2018 WL 4773187, at *4 (N.D. Cal. Oct. 3, 2018).

Here, de Leon does not oppose Proposed Intervenors' motion to intervene to challenge the court's section 1782 order.  *See* Opp'n 2.  The court finds that Proposed Intervenors have standing to challenge the court's order granting section 1782 discovery and have satisfied the requirements of Rule 24(b).  However, the Proposed Intervenors have not established that they have standing to challenge the subpoenas, which are directed to Clorox.  Therefore, the motion to intervene is granted to allow the Proposed Intervenors to move to vacate the court's order granting the section 1782 petition.  The motion to intervene is denied to the extent the Proposed Intervenors seek to quash the subpoenas directed at Clorox, and the Proposed Intervenors' motion to quash the subpoenas is denied as moot.

**B.      Motion to Vacate April 10, 2020 Order Granting Section 1782 Discovery**

**1.      Statutory Requirements**

Clorox and the Intervenors (together, "Movants") argue that the court's April 10, 2020 order should be vacated because de Leon's application does not satisfy the requirements of section 1782.  They argue that de Leon cannot satisfy two of section 1782's three requirements; specifically, that the person from whom discovery is sought is found in this district and that the requested discovery is for use in a proceeding before a foreign or international tribunal.  They do not dispute that de Leon is an "interested person" within the meaning of the statute.

**a.      Discovery from a Person in a District "In Which A Person Resides or Is Found"**

Movants argue that de Leon cannot show that "the person from whom the discovery is sought 'resides or is found'" in this district.  *See Khrapunov*, 931 F.3d at 925.  While they concede that Clorox resides in this district, where its headquarters are located, they argue that de Leon actually seeks documents and information from the two Saudi joint venture entities, Abudawood & Partners and National Cleaning, neither of which are "found" here.

Clorox submits a declaration by Todd Brock, a Clorox Vice President and General Manager, in which he states that Abudawood & Partners is located in Jeddah, Saudi Arabia and National Cleaning is based in Dammam, Saudi Arabia.  According to Brock, Clorox "does not hold any direct interest in Abudawood & Partners or National Cleaning" and instead holds interests in the two entities through two of its subsidiaries.  [Docket No. 31-2 (Brock Decl., May 1, 2020) ¶¶ 1-3.][1]  Clorox (Cayman Islands) Limited ("Clorox Cayman"), which is based in the Cayman Islands, owns 51% of Abudawood & Partners, and Delaware-based Clorox International Company ("Clorox International") owns 51% of National Cleaning.  [Docket No. 48-1 (Brock Decl., July 31, 2020, ("2d Brock Decl.") ¶ 3.  As majority shareholders, Clorox's subsidiaries "now control the day-to-day operations of the Saudi joint ventures."   2d Brock Decl. ¶ 3.  Brock

---

[1] In his original declaration, Brock stated that Clorox owns only "minority interest[s]" in Abudawood & Partners and National Cleaning "as a passive shareholder."  Brock Decl. ¶ 2.  In a supplemental update filed on August 3, 2020, Brock states that Clorox Cayman now owns a 51% interest in Abudawood & Partners and that Clorox International now owns a 51% interest in National Cleaning.  2d Brock Decl. ¶ 3.

United States District Court
Northern District of California

1 states "[t]he business and finance teams for all Clorox Middle East operations," including for

2 Clorox's interests in the two Saudi joint ventures, "are based primarily out of Clorox's London

3 office."  Brock Decl.¶ 5.  Despite the fact that Clorox's subsidiaries control the daily operations of

4 Abudawood & Partners and National Cleaning, Movants argue that those entities are not "found"

5 in this district because Clorox only holds an interest in them through Clorox's subsidiaries.

6   De Leon disputes the Movants' framing of the issue.  She counters that she does not seek

7 evidence from Abudawood & Partners or National Cleaning themselves; rather, she seeks

8 documents and information that are within Clorox's own "possession, custody, or control."

9 According to de Leon, this includes documents and information in the custody or possession of

10 Clorox's subsidiaries Clorox Cayman and Clorox International.  Opp'n 12-13.  Under Ninth

11 Circuit law, "control" is defined as "the legal right to obtain documents upon demand."  *In re*

12 *Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *United States v. Int'l Union of*

13 *Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)); *see also In re ATM Fee*

14 *Antitrust Litig*., 233 F.R.D. 542, 544 (N.D. Cal. 2005) ("for purposes of compliance with Rule 34,

15 a parent company has control of documents in the custody and possession of its wholly owned

16 subsidiary" (citing *Int'l Union*, 870 F.2d at 1452).

17   The court finds that de Leon has satisfied the section 1782 requirement that the person

18 from whom discovery is sought is found in this district.  There is no dispute that de Leon served

19 the subpoenas on Clorox, which is located within this district, and that de Leon seeks documents

20 and information that she contends are in Clorox's control.  *See, e.g., Sergeeva v. Tripleton Int'l*

21 *Ltd*., 834 F.3d 1194, 1200-01 (11th Cir. 2016) (affirming district court's order directing American

22 corporation to produce documents in its possession, custody, or control under section 1782,

23 including documents in its Bahamian affiliate's possession).  Notably, Clorox does not contend

24 that it lacks the legal right to obtain documents on demand from its subsidiaries Clorox Cayman

25 and Clorox International.  In fact, Clorox appears to concede that it has records related to its

26 subsidiaries' ownership in Abudawood & Partners and National Cleaning in its London office.

27 *See* Brock Decl. ¶ 5.  The extent to which Clorox must produce documents that are in its

28 possession, custody, or control but are located abroad is a question more appropriately addressed

1    in the context of the burden associated with the requested discovery.  *See In re Stati*, No. 15-MC-

2    91059-LTS, 2018 WL 474999, at *5-6 (D. Mass. Jan. 18, 2018) (noting that the "plain language of

3    section 1782 . . . 'requires only that the party from whom discovery is sought be 'found' here; not

4    that the documents be found here'" and deferring possession, custody, or control question to Rule

5    45 analysis (quotation omitted)).

6         *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401 (7th Cir. 2004), cited by Movants,

7    does not change this conclusion.  In *Kestrel*, an Australian company, Kestrel Coal, sued Joy

8    Global, an American company, along with four of its foreign subsidiaries in Australia.  After the

9    Australian court denied a request by Kestrel Coal for discovery from the subsidiaries on the

10   ground that the documents were unnecessary, Kestrel Coal filed a section 1782 application in

11   federal district court in Wisconsin, seeking Joy Global's production in Wisconsin of documents

12   held by its foreign subsidiaries for use in the Australian litigation.  *Id.* at 402-03.  The district court

13   granted the application and the Seventh Circuit reversed, noting that the documents were "outside

14   Joy Global's files" and "in the custody of Joy Global's subsidiaries, which are not parties to this

15   proceeding under § 1782."  According to the court, that "[s]ection 1782(a) itself neither instructs,

16   nor permits, courts to disregard the distinction between the corporation that owns a set of

17   documents, and a different corporation that owns stock in the first entity."  *Id.* at 404-05.

18        Contrary to Movants' characterization, the Seventh Circuit in *Kestrel* did not hold that the

19   section 1782 application was improper because Joy Global was not "found" in the district in which

20   the application was made; to the contrary, it held that Joy Global both "[was] found" and resided

21   in that district.  *Id.* at 404.  There are numerous factual differences between de Leon's application

22   and the application in *Kestrel*, but most noteworthy is the fact that the Seventh Circuit did not

23   analyze whether the subsidiaries' documents were in the "control" of the parent company.  *See*

24   *Matter of De Leon*, No. 1:19-mc-15, 2020 WL 1180729, at *5 (D. Ohio Mar. 12, 2020) (noting

25   that "the Seventh Circuit [in *Kestrel*] did not actually reach the key question at-issue here: whether

26   a court can order a domestic corporation to produce those records which it has the *right to demand*

27   (i.e., has control over) from its foreign subsidiaries." (emphasis in original)).  The court also did

28   not determine whether Kestrel Coal was entitled to the documents sought under section 1782, and

1   explicitly noted that it need not "determine whether § 1782 ever permits a district judge to require

2   evidence to be imported from a foreign nation so that it may be handed over here and then

3   exported." *Id.*

4   Clorox does not dispute that it has the legal right to obtain documents on demand from

5   Clorox Cayman and Clorox International, its subsidiaries that have day to day control over

6   Abudawood & Partners and National Cleaning. For this reason, de Leon has established that the

7   person from whom discovery is sought is found in this district.

b.   **Discovery for Use in a Proceeding Before a Foreign or
     International Tribunal**

9   Movants next argue that de Leon has failed to show that the requested discovery is for use

10   in a proceeding before a foreign or international tribunal, and that de Leon instead improperly

11   seeks documents and information for use in a domestic proceeding. Specifically, in 2018, de Leon

12   filed suit against Sheikh Osama's brothers and related business entities in the United States

13   District Court for the Central District of California alleging fraud and related claims (the "Central

14   District action"). [Docket No. 36 (Holscher Decl., May 4, 2020) ¶ 2, Ex. A (Complaint in *de Leon*

15   *v. Ayman Ismail Abudawood, et al.*, Case No. 8:18-cv-01030-JLS-JDE (filed June 11, 2018)).]

16   That case has been stayed since July 2019 pending the outcome of the valuation process in the

17   Saudi actions. Holscher Decl. ¶ 5, Ex. D. Movants note that in addition to requesting materials

18   provided to the valuator, de Leon's subpoena in this matter requests three categories of

19   communications between Clorox and others regarding "the dispute pending in the United States

20   District Court, Central District of California." *See* Subpoena Request for Production ("RFP")

21   Nos. 90-92. They argue that this information "is plainly not 'for use'" in the Saudi actions.

22   Intervenors' Mot. 10. Movants also argue that the remaining requests are not for use in the Saudi

23   actions, as the valuator, not de Leon, "has been empowered by the Saudi court to seek discovery in

24   support of its valuation," and that the discovery de Leon seeks is unnecessary for the valuator to

25   complete its work. *Id.* at 11.

26   De Leon disputes that she seeks discovery for use in the Central District action, noting that

27   since the case is stayed, the discovery from Clorox has "no[] present use in that case." Opp'n 17.

28

1   Further, de Leon submitted a proposed protective order with her application that prohibits the use

2   and disclosure of any information designated "confidential" outside of the Saudi actions absent

3   further court order.  [Docket No. 1-3 (Proposed Protective Order) ¶ 8.]  Therefore, there is no

4   indication that de Leon improperly seeks the requested documents and information from Clorox

5   for use in the Central District action.

6          De Leon also explains that communications about the Central District action are

7   potentially relevant to her request for a buyout of her and AA's inherited interests in the

8   Abudawood Group companies, which is an issue pending in the Saudi action, and that she seeks

9   the "Clorox's credible, unbiased information" about Abudawood & Partners and National

10  Cleaning in order to challenge and verify the accuracy of the Deloitte valuation.  Opp'n 6, 17-18.

11  As her attorney in the Saudi actions explains, de Leon may be able to submit new evidence in

12  connection with an appeal of the July 2, 2020 judgment by the court in Jeddah, challenging the

13  accuracy of Deloitte's valuation.  2d Hammad Decl. ¶ 8.

14         The court concludes that de Leon has satisfied the requirement under section 1782 that the

15  discovery is "for use" in the Saudi actions.

16                 **2.    Discretionary Intel Factors**

17         Movants next argue that the *Intel* factors do not support the discovery sought.

18         With respect to the first discretionary factor, the Supreme Court has noted that "when the

19  person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for

20  § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a

21  nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those

22  appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in

23  the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their

24  evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542

25  U.S. at 264 (internal quotations and citations omitted).

26         Here, Movants argue that "the true targets" of de Leon's discovery are the Saudi

27  companies, Abudawood & Partners and National Cleaning, and that they are parties in the Saudi

28  actions through their parent company, Al Wafra, which is a plaintiff in those actions.  Intervenors'

1   Mot. 12.  Therefore, they argue, de Leon can and should pursue the requested discovery in Saudi

2   Arabia.  Movants' position is not persuasive.  As discussed above, de Leon's subpoenas are

3   directed to Clorox and request documents and information that are in Clorox's control, because

4   she seeks to independently verify and ensure the accuracy of Deloitte's valuation.  Clorox is not a

5   party to the proceedings in Saudi; thus, this factor weighs in de Leon's favor.

6           The second factor—the "nature of the foreign tribunal, the character of the proceedings

7   underway abroad, and the receptivity of the foreign government or the court or agency abroad to

8   U.S. federal court judicial assistance"—also weighs in favor of the application.  De Leon's

9   attorney states that de Leon and AA may appeal the Jeddah court's judgment and submit new

10  evidence in connection with the appeal.  They may also file a new lawsuit to challenge the

11  accuracy of Deloitte's valuation.  2d Hammad Decl. ¶¶ 6-8.  Movants argue that de Leon cannot

12  show that the Saudi court would be receptive to this court's assistance because the Saudi court

13  appointed Deloitte to conduct an independent valuation, and not the parties, and because Saudi

14  Arabia is not a party to the Hague Evidence Convention.  However, this ignores de Leon's stated

15  reason for this discovery: she seeks independent, objective evidence of the value of the companies

16  at issue to confirm or challenge any valuation thereof.  Moreover, the Supreme Court has noted

17  that the absence of similar discovery in a foreign nation "does not necessarily signal objection to

18  aid from United States federal courts."  *Intel*, 542 U.S. at 261 ("A foreign nation may limit

19  discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions . .

20  . [t]here is no reason to assume that because a country has not adopted a particular discovery

21  procedure, it would take offense at its use." (quotation and citation omitted)).

22          The third *Intel* factor examines "whether the discovery request is an attempt to circumvent

23  foreign proof-gathering restrictions or other policies of a foreign country of the United States."

24  *Husayn v. Mitchell*, 938 F.3d 1123, 1128 n.9 (9th Cir. 2019).  There is no indication that de Leon

25  is attempting to circumvent discovery restrictions in Saudi Arabia, and no evidence that courts in

26  Saudi Arabia prohibit the discovery sought here.  "The fact that more evidence may be obtained

27  via a § 1782 application than via the foreign discovery procedures does not amount to

28  circumvention and does not militate against approval of the application."  *Illumina Cambridge*

13

1   *Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO (TSH), 2020 WL 820327, at *5 (N.D.

2   Cal. Feb. 19, 2020) (citing *In re Nikon Corp.*, No. 17-mc-80071-BLF, 2017 WL 4647753, at *4

3   (N.D. Cal. Oct. 16, 2017)).  Movants note de Leon's failure to seek this discovery in Saudi Arabia

4   and argue that this weighs against her subpoenas because it indicates an attempt to circumvent

5   Saudi discovery rules.  However, "[t]here is no requirement that the party seeking discovery

6   pursuant to section 1782 must first request discovery from the foreign tribunal."  *In re Republic of*

7   *Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec.*

8   *1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (citing *Application of Malev Hungarian Airlines,*

9   *964 F.2d 97, 100 (2d Cir. 1992)).  Moreover, there is no foreign discoverability limitation on the

10  provision of section 1782 assistance, i.e., the statute does not bar granting section 1782

11  applications simply because the documents would be unobtainable if located in the foreign

12  jurisdiction.  *Intel*, 542 U.S. at 260-61.

13       In sum, the first three *Intel* factors weigh in favor of de Leon's section 1782 application.

14  The final *Intel* factor examines whether the discovery sought is unduly intrusive or burdensome.

15  Once a court has determined that discovery through section 1782 is not being used to circumvent

16  foreign proof-gathering restrictions and grants the section 1782 application, "the ordinary tools of

17  discovery management, including [Federal Rule of Civil Procedure] 26, come into play; and with

18  objections based on the fact that discovery is being sought for use in a foreign court cleared away,

19  section 1782 drops out."  *Husayn*, 938 F.3d at 1128 n.9 (quotation and citation omitted).  "In other

20  words, once a section 1782 application is granted, the ordinary rules of civil procedure relating to

21  discovery shift into place."  *Id*.

22       As noted, Clorox also moves to quash the subpoenas pursuant to Rule 45, arguing that

23  compliance with the subpoenas would impose an undue burden.  The court therefore denies the

24  motions to vacate the April 10, 2020 order granting de Leon's section 1782 application and

25  addresses Clorox's objections to the subpoenas in the context of the motion to quash.

26  **C.**       **Motion to Quash**

27       In determining the propriety of de Leon's subpoenas, the court "balances the relevance of

28  the discovery sought, [de Leon's] need, and the potential hardship to [Clorox]."  *Gonzales*, 234

1    F.R.D. at 680 (citation omitted).  As the party moving to quash the subpoenas, Clorox bears the

2    "burden of persuasion" under Rule 45(c)(3).  *See Moon*, 232 F.R.D. at 637.

3         Clorox argues that the subpoenas, which contain 101 separate document requests and 46

4    deposition topics, would be "overly burdensome even under normal circumstances," and are

5    particularly so given present restrictions placed on businesses in Oakland, London, and elsewhere

6    due to the COVID-19 pandemic.  Clorox's Mot. 9-10.  It notes that several of the document

7    requests are not limited by date, and that Clorox's relationships with Abudawood & Partners and

8    National Cleaning date back to the 1960s.  Brock Decl. ¶ 6.  It also argues that the requests are

9    overbroad and unduly burdensome as they seek information that should be sought from the parties

10   instead.

11        As noted, the court ordered the parties to meet and confer about the scope of the subpoenas

12   in advance of the hearing in order to eliminate or narrow their disputes and to submit a joint letter

13   setting forth their "best and final proposed compromise" for each disputed category or request.

14   [Docket No. 40.]  The parties timely filed a joint letter that helpfully set forth a number of

15   agreements, including de Leon's withdrawal of 35 of the 101 RFPs.  Jt. Letter 2 n.2.  De Leon has

16   further agreed to narrow the time period for each of the remaining RFPs "by moving the start date

17   to January 1, 2015."  Jt. Letter 2.  The parties also agree that any documents produced by Clorox

18   will likely cover the topics in the deposition subpoena, and if that is the case, a deposition may not

19   be necessary.  Accordingly, the parties ask the court to defer ruling on the enforceability of the

20   deposition subpoena.  *Id*.  The letter also sets forth the parties' competing positions on five

21   categories of RFPs.  Jt. Letter 3-7.

22        The bulk of the parties' remaining disputes center on the burden of producing documents

23   in Clorox's possession, custody, or control, including documents located abroad.  It appears that

24   some or all of the responsive documents are located in Clorox's London office, but this is not

25   entirely clear, *see* Brock Decl. ¶ 5, and Clorox does not provide any details about the burden

26   associated with producing such documents.  Therefore, Clorox's motion to quash the subpoenas is

27   denied without prejudice.  By no later than August 20, 2020, Clorox shall file a sworn declaration

28   that goes category-by-category through each of the five categories of disputed RFPs and sets forth

United States District Court
Northern District of California

15

in detail all facts that support any argument that production of some or all of the requested

documents located abroad would be burdensome.  Clorox and de Leon shall then meet and confer

regarding the remaining RFPs.  If any disputes remain after meeting and conferring the parties

shall submit a joint letter that does not exceed five pages by August 31, 2020 setting forth their

best and final proposed compromise for each disputed category or request.  The parties may not

incorporate by reference any previous submissions.

## IV.     CONCLUSION

For the foregoing reasons, the motion to intervene is granted in part and denied in part.

The motions to vacate the April 10, 2020 order authorizing discovery are denied.  Clorox's motion

to quash is denied without prejudice.

**IT IS SO ORDERED.**

Dated: August 10, 2020



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California