UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEANOR DE LEON,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CLOROX COMPANY,<br><br>    Defendant. | Case No. 19-mc-80296-DMR<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 58 |

Petitioner Eleanor de Leon filed an ex parte application seeking discovery from the Clorox Company ("Clorox") pursuant to 28 U.S.C. § 1782 to obtain evidence for use in legal proceedings in Saudi Arabia. Intervenors Mohamad Ali Abudawood & Partners for Industry Company ("Abudawood & Partners") and National Cleaning Products Company ("National Cleaning") now move for reconsideration of the court's August 10, 2020 order denying their motion to vacate the order granting de Leon's section 1782 application. [Docket No. 58.] De Leon opposes the motion. [Docket No. 59.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion for reconsideration is denied.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

De Leon is a U.S. citizen and the widow of the late Sheikh Osama Ismail Abudawood ("Sheikh Osama"), a citizen of Saudi Arabia who died in 2017. [Docket Nos. 2 (de Leon Decl., Sept. 30, 2019) ¶ 2; 3 (Hammad Decl., Nov. 5, 2019) ¶ 4.] She filed this application seeking discovery in aid of foreign proceedings regarding the distribution of Sheikh Osama's estate in Saudi Arabia. Under applicable law, de Leon and A.A., her daughter with Sheikh Osama, are entitled to certain shares of Sheikh Osama's estate. Hammad Decl. ¶¶ 10, 11; de Leon Decl. ¶ 2.

Along with his brothers Sheikh Anas and Sheikh Ayman, Sheikh Osama was an owner and director of a multi-billion dollar "group of companies within a business conglomerate referred to

generally as the Abudawood Group." Hammad Decl. ¶¶ 6-8. A company within the Abudawood Group called Al Wafra International Company for Industrial Investments Limited ("Al Wafra"), has joint ventures with Clorox to manufacture and sell Clorox products in the region. *Id*. at ¶¶ 6, 7, 9. These joint ventures are Intervenors Abudawood & Partners and National Cleaning. Sheikh Osama's ownership interests in Al Wafra and the joint ventures with Clorox are significant assets of his estate. *Id*. at ¶ 9.

At the time de Leon filed her section 1782 application, there were 11 actions pending in Saudi courts regarding the disposition of Sheikh Osama's estate (the "Saudi actions"). *Id*. at ¶ 13. The Abudawood Group or its affiliates brought nine of the actions to determine "the nature and interests of Sheikh Osama's heirs" in the corporate entities. De Leon and A.A. are defendants in those actions and seek a buyout of their inherited interests in the companies. *Id*. at ¶¶ 14, 15. The Commercial Court in Jeddah, Saudi Arabia is overseeing de Leon and A.A.'s claims to a buyout and a valuation of the Abudawood Group companies and assets. *Id*. at ¶ 14.

In August 2019, the Saudi Commercial Court appointed Deloitte to value Sheikh Osama's interests in the Abudawood Group companies at issue in the Saudi actions, including the joint ventures with Clorox. Hammad Decl. ¶ 19, Ex. F. De Leon contends that the Abudawood Group has refused to provide information about the corporate and ownership structure and financial performance of the joint ventures. *Id*. at ¶¶ 20, 21. De Leon seeks evidence of the value of companies in which she and her daughter have ownership interests, arguing that such evidence is necessary to determine the "fair value" of each of their inherited interests in the joint ventures. *Id*. at ¶ 21. She also argues that in the event she does not obtain a buyout of her interests, corporate and financial information regarding the joint ventures "is essential to understand the legal and capitalization requirements to admit [her], a non-Saudi citizen, into the Abudawood Group companies." *Id*. at ¶ 22.

Clorox is headquartered in this district. De Leon sought leave pursuant to section 1782 to serve two subpoenas on Clorox that seek corporate and financial information for the joint ventures at issue. Abudawood & Partners and National Cleaning moved to intervene to oppose her section 1782 application. On April 10, 2020, the court granted the application and denied the motion to

intervene without prejudice as premature. *Matter of De Leon*, No. 19-mc-80296 DMR, 2020 WL 1820683 (N.D. Cal. Apr. 10, 2020). De Leon served the subpoenas on Clorox in April 2020.

Clorox subsequently moved to quash the subpoenas and vacate the order authorizing discovery. Abudawood & Partners and National Cleaning again sought leave to intervene in order to move to vacate the April 10, 2020 order and quash the subpoenas.

On July 2, 2020, after the briefing on the motions was complete, the Commercial Court in Jeddah, Saudi Arabia issued its final judgment. [Docket No. 44 (Statement of Recent Decision) Exs. A (judgment), B (English translation of judgment).] De Leon's attorney in the Saudi actions, Dr. Adli Hammad, submitted a declaration in which he states that the Commercial Court affirmed the buyout requested by de Leon and A.A. and ruled that the value of the buyout will be determined by a separate lawsuit. [Docket No. 44-1 (Hammad Decl., July 13, 2020, "2d Hammad Decl.") ¶¶ 3, 5.] He also states that de Leon and A.A. have the right under Saudi law to appeal from the judgment and will appeal. On appeal, de Leon and A.A. may enter "new evidence, if such evidence is material to the claim itself." *Id*. at ¶¶ 6, 7. If the appeal is accepted, it "shall revisit the valuation provided by the expert," and if the evidence is deemed admissible, "then the valuation may be amended to reflect the actual value of the shares." *Id*. at ¶ 8. Dr. Hammad states that if the appeal is not accepted, "a new lawsuit shall be filed to determine the value of the shares in question[,] [c]hallenging the accuracy of the valuation provided and requesting the appointment of a new expert." *Id*.

On August 10, 2020, the court granted in part the motion to intervene, denied the motions to vacate, denied Intervenors' motion to quash, and denied Clorox's motion to quash without prejudice. *De Leon v. Clorox Co.*, No. 19-MC-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020).

Intervenors then sought leave to file a motion for reconsideration of the August 10, 2020 order denying their motion to vacate the order granting the section 1782 application. [Docket No. 50 (Mot. for Leave).] Under Civil Local Rule 7-9(b)(2), reconsideration of an interlocutory order may be appropriate due to "[t]he emergence of new material facts or a change of law occurring after the time of such order." Civ. L.R. 7-9(b)(2). Intervenors requested leave to file a motion for

reconsideration in light of Maryam Ba'Othman's August 11, 2020 acceptance of the Deloitte valuation in the Saudi actions, the relevance of which is explained further below. According to Intervenors, this development is a new "material fact[]" which "effectively resolves the Saudi dispute" and "demonstrates the lack of receptivity of the foreign court to Section 1782 discovery." Mot. for Leave 1, 3.[1]

On September 8, 2020, the court granted Intervenors leave to file a motion for reconsideration solely on the issue of whether Ba'Othman's August 11, 2020 acceptance of the valuation is a "new material fact[]" which supports their motion to vacate. [Docket No. 57.] The parties timely filed their submissions.

## II. LEGAL STANDARD

Pursuant to Civil Local Rule 7-9, a party may seek leave to file a motion for reconsideration of an interlocutory order at any time before judgment. Civ. L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. Civ. L.R. 7-9(b)(1)-(3). Reconsideration of a prior ruling is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.

---

[1] One week after requesting leave to file a motion for reconsideration, Intervenors filed objections to the August 10, 2020 order under Federal Rule of Civil Procedure 72(b), Local Rule 72-3, and 28 U.S.C. § 636(b)(1)(B). [Docket No. 52.] Intervenors objected to the order on the grounds that 1) they have standing to move to quash the subpoenas to Clorox; 2) de Leon failed to satisfy the statutory requirements of section 1782 and the discretionary factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241 (2004); and 3) the requested discovery does not further the twin aims of section 1782. They also argue that the August 10, 2020 order denying the motions to quash was dispositive and should be reviewed de novo. *See Khrapunov v. Proysankin*, 931 F.3d 922, 931-34 (9th Cir. 2019) (Callahan, J., concurring and dissenting).

Noting the procedural inconsistency between the filings, the court ordered Intervenors to indicate whether they intended to move forward with their objections or with the motion for reconsideration. [Docket No. 54.] In response, Intervenors stated their preference to move for reconsideration and withdrew their objections and request for de novo review without prejudice. [Docket No. 55.]

4

2000). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

**III. DISCUSSION**

Maryam Ba'Othman is the prospective buyer of de Leon and A.A.'s interests in the late Sheikh Osama's assets. [Docket No. 58-1 (Basrawi Decl., Aug. 17, 2020) ¶ 3, Ex. A (Saudi Commercial Court judgment).] On August 11, 2020, one day after issuance of the order denying the motions to vacate the order granting de Leon's section 1782 application, Ba'Othman formally accepted Deloitte's valuation of those interests; that is, she agreed to purchase de Leon and A.A.'s interests at the price set by the valuation. Basrawi Decl. ¶ 4, Ex. B (Aug. 11, 2020 correspondence). Intervenors contend that Ba'Othman's acceptance of the valuation is a material change in the factual circumstances of this matter, and that there is now "insufficient basis to allow for the expansive discovery" sought by de Leon. Mot. 1.

Intervenors submit the declaration of Dr. Ahmed Basrawi, an attorney who represents Ba'Othman in the Saudi actions. He also represents Intervenors' parent company, Al Wafra. Basrawi Decl. ¶¶ 2, 4. Dr. Basrawi acknowledges that the July 2020 Saudi Commercial Court judgment declares that the value of the buyout requested by de Leon and A.A. will be determined by a separate lawsuit. The judgment states in relevant part that "[t]he value of such disengagement [of de Leon and A.A.] shall be determined through an independent case, if the parties having capacity to do so desire." *See id*. at ¶ 4; Saudi Commercial Court judgment at ECF p. 26. However, according to Dr. Basrawi, "the right to file a lawsuit demanding a new valuation does not belong to Ms. de Leon and [A.A.]." Although he does not explain who may file such a lawsuit, he states that Ba'Othman "did retain the authority to demand a second valuation should she disagree with Deloitte's buyout price," and that she "did not exercise this option." *Id*. Dr. Basrawi states that de Leon and A.A. "have no such option." *Id*.

Dr. Basrawi also disputes Dr. Hammad's previous statements that de Leon and A.A. have the right under Saudi law to appeal from the judgment; that they may enter new evidence on appeal; and that if the appeal is accepted, it "shall revisit the valuation provided by the expert." Basrawi Decl. ¶ 5 (quoting 2d Hammad Decl. ¶¶ 6-8). According to Dr. Basrawi, the Saudi

1    Commercial Court judgment "did not deal directly with the valuation of the shares" and he is
2    unaware of a mechanism by which de Leon and A.A. may appeal the judgment "for something
3    that was not covered by the judgment," i.e., the valuation of the shares. Basrawi Decl. ¶ 5.
4        Based on this evidence, Intervenors dispute de Leon's claim that there is "an active dispute
5    in Saudi Arabia concerning the valuation." Mot. 2. Essentially, they claim that Ba'Othman's
6    acceptance of the Deloitte valuation renders this matter moot, citing *Khrapunov v. Prosyankin*,
7    931 F.3d 922, 925 (9th Cir. 2019).
8        In *Khrapunov*, a magistrate judge granted Petitioner Khrapunov's section 1782 application
9    for issuance of a subpoena for use in "his attempt to discharge two court orders issued against him
10   in ongoing litigation in England." *Id*. at 923-24. Khrapunov allegedly had assisted in defrauding
11   a bank in Kazakhstan of billions of dollars, and the English court orders "impose[d] a worldwide
12   freeze of Khrapunov's assets . . . and permit[ed] the bank's attorneys to cross-examine Khrapunov
13   concerning his assets." *Id*. at 924. The magistrate judge later denied a motion to quash the
14   subpoena filed by two objectors who then sought review by the district court. The district court
15   denied relief and the objectors appealed.
16       During the pendency of the appeal, the English courts denied Khrapunov's attempts to
17   discharge the two court orders against him. Notably, "Khrapunov was not given permission to
18   appeal those denials, and at least one judge found Khrapunov's arguments to be 'totally without
19   merit.'" *Id*. At the Ninth Circuit, the objectors argued that the final, nonappealable denials of
20   Khrapunov's applications rendered the section 1782 matter moot, while Khrapunov argued that
21   "he retain[ed] the ability to reopen those proceedings if he discover[ed] new evidence," such as the
22   information he sought in the subpoena. *Id*. The Ninth Circuit found that section 1782's "second
23   statutory requirement—that the discovery be for use in a foreign 'proceeding'—[was] called into
24   doubt by the developments in the English litigation." *Id*. at 925. The court noted that even though
25   section 1782 "authorizes discovery in a 'broad range' of circumstances, those circumstances are
26   not without *some* limit . . . [and] [a]s a general matter, the mere possibility that discovery might
27   permit already concluded foreign proceedings to be reopened likely approaches that limit." *Id*.
28   (emphasis in original). Accordingly, the Ninth Circuit vacated the district court's order and

6

1  remanded the matter for "additional fact-finding about the nature of the English 'proceeding,'"
2  including "the discovery sought and its relationship to the possibility of reopening the English
3  proceedings; about the standard Khrapunov must satisfy to reopen those proceedings; about the
4  relative likelihood of satisfying that standard; and about whether the discovery sought will actually
5  assist Khrapunov in satisfying that standard." *Id*. at 925-26.  The court also observed that the
6  developments in the English litigation were "relevant to the discretionary factors courts consider
7  when evaluating § 1782 applications, as well," including "the character of the proceedings
8  underway abroad and the receptivity of the English courts to U.S. federal-court judicial
9  assistance." *Id*. at 926 (quotation marks and citation omitted).  Therefore, it noted that "it may be
10 appropriate for the district court to reevaluate these discretionary factors" on remand.  *Id*.

11 Intervenors argue that this case is similar to *Khrapunov* in that de Leon seeks section 1782
12 discovery in connection with her attempts to "reopen her already concluded case." Mot. 3.  De
13 Leon does not dispute that Ba'Othman's August 11, 2020 acceptance of the valuation for the
14 buyout is "new evidence" arising after the court's decision but disagrees that it rendered moot her
15 request for discovery from Clorox.  De Leon submits an additional declaration by her attorney, Dr.
16 Hammad, in which he states that de Leon filed a timely appeal of the Commercial Court judgment.
17 [Docket No. 59-1 (Hammad Decl., Sept. 22, 2020) ¶ 5 (describing appeal filed on Aug. 10, 2020).]
18 According to Dr. Hammad, de Leon raises two grounds in the appeal: 1, that the valuation lacks
19 "impartiality and objectiveness" due to Deloitte's prior dealings with the Abudawood Group; and
20 2) that the Commercial Court "affirmed a buyout without applying the proper rules of sales, since
21 it had not met the criteria of sale imposed by Islamic principles."  Based on these arguments, de
22 Leon seeks the dismissal of Deloitte and its valuation and reconsideration of the ruling affirming
23 the buyout of de Leon and A.A.'s interests.  *Id*. at ¶¶ 6, 7.  Dr. Hammad also states that under
24 Saudi law, de Leon may submit new evidence in support of the appeal if such evidence is material
25 to the case, and that if the appeal is not accepted, de Leon will file a separate lawsuit to determine
26 the value of the buyout, in accordance with the Commercial Court's judgment.  *Id*. at ¶¶ 8, 9.
27 Additionally, Dr. Hammad notes that Ba'Othman, the prospective purchaser of de Leon and
28 A.A.'s interests, died on September 20, 2020.  *Id*. at ¶ 10.  De Leon notes that this "further

complicat[es] the Saudi proceedings" and means that the litigation will continue.  Opp'n 2.

Based on this record, the court cannot say that the Saudi litigation is "concluded," as Intervenors argue.  Dr. Basrawi and Dr. Hammad apparently disagree about de Leon's ability to challenge the valuation and her prospects for successfully doing so, but de Leon has already filed a timely appeal of the judgment in which she seeks to vacate Deloitte's valuation.  Intervenors do not challenge Dr. Hammad's statement that she may be able to submit new evidence in connection with that appeal.  These facts distinguish this case from *Khrapunov*, who was barred from appealing the denials of his applications to discharge the English court orders and could only argue that there was a possibility of reopening the proceedings if he discovered new evidence.  931 F.3d at 924.  In contrast, this case has more than a "possibility" that a foreign proceeding will be reopened; it involves an actual appeal that has already been filed, thus satisfying the statutory requirement that the discovery be for use in a foreign proceeding.  *Id*. at 925.  Moreover, the court need not revisit its analysis of the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), in light of the developments in the Saudi litigation, since it already considered de Leon's then-anticipated appeal of the Commercial Court's judgment and potential new lawsuit in discussing the *Intel* factors in its August 10, 2020 order.  *See de Leon*, 2020 WL 4584204, at *7-8.

In sum, Intervenors have failed to establish that Ba'Othman's acceptance of the Deloitte valuation justifies reconsideration of the court's order denying their motion to vacate the court's order granting de Leon's 28 U.S.C. § 1782 application.  Their motion for reconsideration is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Intervenors' motion for reconsideration is denied.

**IT IS SO ORDERED.**

Dated: October 30, 2020




Donna M. Ryu
United States Magistrate Judge