UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEANOR DE LEON,<br><br>    Plaintiff,<br><br>v.<br><br>THE CLOROX COMPANY,<br><br>    Defendant. | Case No. 19-mc-80296-EMC<br><br>**ORDER DENYING INTERVENORS' MOTION FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Docket No. 66 |

Intervenors Mohamad Ali Abudawood & Partners for Industry Company ("**Abudawood & Partners**") and National Cleaning Products Company ("**National Cleaning**") have filed a self-styled Motion for *De Novo* Determination of Dispositive Matter Referred to Magistrate Judge Re: Motion to Vacate Order Granting § 1782 Application, Motion to Intervene, and Motion to Quash Subpoenas (ECF No. 49) and Motion for Reconsideration (ECF No. 60). Docket No. 66. Intervenors argue that Magistrate Judge Ryu's order, granting Petitioner Ms. Eleanor de Leon's application to obtain discovery pursuant to 28 U.S.C. § 1782 from Respondent the Clorox Company ("Clorox") for use in legal proceedings in Saudi Arabia, was in error under a *de novo* standard of review. Docket No. 49 (hereinafter "Order"). For the foregoing reasons, Intervenors' motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

Petitioner Eleanor de Leon is a U.S. citizen and widow of the late Sheikh Osama Ismail Abudawood ("Sheikh Osama"), a Saudi Arabian citizen who died in 2017. Order at 2. Prior to his

1  death, Sheikh Osama was one of the owners of a group of companies within a business
2  conglomerate known as the **Abudawood Group**, which develops, manufactures, and distributes
3  Clorox and Procter & Gamble products throughout the Middle East. *Id.* One of the Abudawood
4  Group's companies, Al Wafra International Company for Industrial Investments Limited ("**Al**
5  **Wafra**"), engages in joint ventures with Clorox to manufacture and sell Clorox products in the
6  region. *Id.* The intervenors herein are joint venturers Abudawood & Partners and National
7  Cleaning. *Id.*

8        The Clorox Company has an interest in Intervenors through two separate and legally
9  distinct entities. The Cayman Islands-based Clorox (Cayman Islands) Limited ("Clorox
10 Cayman") has a 51% interest in Abudawood & Partners; and the Delaware-based Clorox
11 International Company ("Clorox International") has a 51% interest in National Cleaning. Mot. at
12 4. Ms. de Leon sought leave to serve two subpoenas on the Oakland-based Clorox Company,
13 which is located in this judicial district (though not a direct joint venture partner with Abudawood
14 & Partners and National Cleaning). Order at 3; Mot. at 4.

15       Petitioner Ms. de Leon and her minor daughter sought subpoenas under § 1782 in aid of a
16 proceeding in Saudi Commercial Court for the administration of the estate of Sheikh Osama,
17 which is administered in accordance with the Islamic Sharia Rules and Regulations of the
18 Kingdom of Saudi Arabia ("Sharia law"). Order at 2. In that Saudi proceeding, Ms. de Leon
19 sought a buyout of her inherited interests in the companies. *Id.* There were 11 actions pending in
20 Saudi courts, at the time of Ms. de Leon's § 1782 application, for the division of Sheikh Osama's
21 estate. *Id.* In August 2019, the Saudi Commercial Court appointed Deloitte to value Sheikh
22 Osama's interest in all the Abudawood Group companies (collectively, "AGC"), including the
23 joint ventures with Clorox. *Id.* at 3. Ms. de Leon sought relief in U.S. court because she alleged
24 that AGC has refused to provide her with information related to the corporate and ownership
25 structure of the joint ventures between AGC and Clorox, which she needs to determine the fair
26 value of each of her inherited interests in the joint ventures. *Id.*

27 B.    <u>Procedural Background</u>
28       Pursuant to 28 U.S.C. § 1782, Ms. de Leon filed an ex parte application seeking leave to

1  serve two subpoenas on the Oakland-based Clorox company, one for the production of documents
2  and one for the deposition of Clorox under Federal Rule of Civil Procedure 30(b)(6).  Docket No.
3  1 at 1.  Abudawood & Partners and National Cleaning moved to intervene to oppose the ex parte
4  application, arguing, *inter alia*, that they were the true targets of Ms. de Leon's subpoenas (and
5  not the Oakland-based Clorox) and that Ms. de Leon sought evidence to be used in a stayed
6  domestic proceeding ("the California RICO Action").  Docket No. 10 at 14-15.  The California
7  RICO Action was brought by Ms. de Leon against several Abudawood Group companies, and
8  involves claims for fraud, civil RICO, and breach of oral agreement in connection with the
9  valuation of the Abudawood Group.  Mot. at 7.  Judge Ryu granted the § 1782 application on
10 April 10, 2020 and permitted Ms. de Leon to serve the subpoenas, denying the motion to intervene
11 as premature.  Docket No. 24 at 6-7.  Ms. de Leon served the subpoenas on Clorox on April 13,
12 2020.  *See* Docket Nos. 25 and 26.
13        The Oakland-based Clorox Company subsequently moved to quash the subpoenas
14 pursuant to § 1782 and Rule 45 (Docket No. 31) and Abudawood & Partners and National
15 Cleaning separately sought leave to intervene for the purpose of moving to vacate the discovery
16 order and to quash the subpoenas issued to Clorox.  Docket No. 33.  On July 2, 2020, after
17 briefing on these motions was complete, the Saudi Commercial Court affirmed the buyout
18 requested by Ms. de Leon and ruled that the value of the buyout would be determined in a separate
19 lawsuit.  Order at 4.
20        Counsel for Ms. de Leon in Saudi Arabia has stated that Ms. de Leon has the right to
21 appeal the buyout order of the Commercial Court to challenge the valuation of the Abudawood
22 Group submitted by the court-appointed valuation firm (Deloitte), and if the evidence Ms. de Leon
23 obtains from Clorox in the § 1782 application is deemed admissible, the valuation may be
24 amended to reflect the actual value of the shares.  *Id.*  Ms. de Leon states that she has lodged such
25 an appeal because she believes Deloitte's valuation of her shares is "grossly inadequate."  Opp. At
26 12-13.  Thus, even though Ms. de Leon's buyer for Abudawood Group (her mother-in-law, Mrs.
27 Maryam Ba'Othman) has formally accepted the buyout price set by Deloitte, Ms. de Leon has
28 challenged that price on appeal.  *See* Opp. at 12-13 ("[t]o be clear, Ms. de Leon has not only not

1  accepted the Deloitte valuation as being a valid buyout price, she maintains that such valuation is
2  grossly inadequate and for that reason has lodged her appeal to the Saudi appellate court"). Ms.
3  Ba'Othman passed away on September 20, 2020, which raises questions about the viability of the
4  Saudi Commercial Court's order requiring Mrs. Ba'Othman to consummate the buyout. *See id.* at
5  12 n.11.

6  On August 10, 2020, Judge Ryu found, under the general requirements of 28 U.S.C. §
7  1782 and the discretionary factors developed by the Supreme Court in *Intel Corp. v. Advanced
8  Micro Devices, Inc.*, 542 U.S. 241 (2004), that Ms. de Leon's application was proper; and Judge
9  Ryu denied the motions to vacate the April 10, 2020 order authorizing Ms. de Leon to issue
10 subpoenas on Clorox pursuant to 28 U.S.C. § 1782. Order at 8-14. Judge Ryu granted in part and
11 denied in part the Motion to Intervene. The Motion was granted to allow the Proposed Intervenors
12 to move to vacate the court's order granting the § 1782 application; but it was denied to the extent
13 the Proposed Intervenors sought to quash the subpoenas directed at Clorox. Order at 7. Judge
14 Ryu also denied Clorox's motion to quash the subpoenas without prejudice and ordered Clorox
15 and Ms. de Leon to meet and confer regarding the remaining RFP's. Order at 15-16.

16 On October 30, 2020, Judge Ryu denied the Intervenors' Motion for Reconsideration of
17 the August 10, 2020 order granting Ms. de Leon's § 1782 application. Docket No. 66.
18 Intervenors have now filed the instant motion, seeking an order (1) vacating Judge's Ryu orders
19 (Docket Nos. 49 and 60), (2) vacating the order granting Ms. de Leon's § 1782 application in the
20 first instance (Docket No. 24), and (3) quashing the subpoenas that issued pursuant to that order
21 (Docket Nos. 25 and 26). Mot. at 22.

22                    **II.     DISCUSSION**

23 A.    Threshold Legal Issue (Standard of Review)

24 As a preliminary matter, the Court must decide on the standard of review for analyzing
25 Judge Ryu's order. When a magistrate judge issues an order on a non-dispositive matter, the
26 district judge in the case "must consider timely objections and modify or set aside any part of the
27 order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). With respect to
28 dispositive motions, "[t]he district judge must determine de novo any part of the magistrate

4

judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). *See also* 28 U.S.C. § 636(b)(1).

Intervenors have filed a self-styled "Motion for *De Novo* Determination of Dispositive Matter Referred to Magistrate Judge," but Intervenors admit that courts in this judicial district are divided on whether a ruling on a motion to quash a § 1782 subpoena is dispositive or non-dispositive for purposes of Rule 72. Mot. at 9 (citing *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO, 2020 U.S. Dist. LEXIS 62009, at *4-5 (N.D. Cal. Apr. 7, 2020) (noting that courts in this judicial district have applied both a clear error standard and a *de novo* standard and analyzing the magistrate judge's decision under both).

The Court need not resolve the split over the proper standard, because it finds that Judge Ryu's Order was proper upon a *de novo* review and that Judge Ryu did not commit clear error in denying Intervenors' Motion to Vacate the Order granting the § 1782 application.

B.  Legal Standard (§ 1782)

28 U.S.C. § 1782 provides as follows:

> "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."

28 U.S.C. § 1782. Thus, § 1782 authorizes district courts to authorize discovery where three requirements are satisfied: "(1) the person from whom the discovery is sought resides or is found

5

in the district of the district court where the application is made; (2) the discovery is for use in a proceeding in a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).

In *Intel*, the Supreme Court developed a number of discretionary factors which bear consideration in ruling on a § 1782(a) request. First, "[w]hen the person from whom discovery is sought is a participant in the foreign proceeding … the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence … [i]n contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Second, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U. S. federal-court judicial assistance." *Id.* The third *Intel* factor asks whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65. Fourth, "unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* at 265.

Applying *Intel*, the Ninth Circuit noted that district courts may grant § 1782 applications in a broad range of circumstances, but that "those circumstances are not without some limit"; for instance, "the mere possibility that discovery might permit already concluded foreign proceedings to be reopened likely approaches that limit." *Khrapunov*, 931 F.3d at 925.

C.  Judge Ryu's Order

The Court now reviews Judge Ryu's findings with respect to § 1782's requirements and the discretionary *Intel* factors under both a *de novo* and clearly erroneous standard of review.

1.  § 1782(a)'s "found in" requirement

Addressing the first requirement of § 1782, Judge Ryu found that the person from whom discovery is sought is found in this judicial district. Order at 9. While the Oakland-based Clorox

1   Company is not a member of the Saudi joint ventures with Intervenors, its subsidiaries are
2   majority shareholders who control the day-to-day operations of the ventures, and Ms. de Leon
3   therefore seeks documents that are in Clorox's "possession, custody, or control." *Id.* at 8-9 (citing
4   *7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1107
5   (9th Cir. 1999) ("Federal Rule[] of Civil Procedure [45] require[s] a party served with a subpoena
6   for records to produce those records that are in its 'possession, custody or control[]' … [and]
7   [c]ontrol is defined as the legal right to obtain documents upon demand")). *Cf. V.Y. v. Instant*
8   *Brands, Inc.*, No. 20-cv-01084-MMC (DMR), 2021 U.S. Dist. LEXIS 25736, at *2 (N.D. Cal.
9   Feb. 10, 2021).
10      Intervenors dispute Judge Ryu's characterization of *Kestrel Coal PTY. LTD. v. Joy Glob.,*
11  *Inc.*, 362 F.3d 401 (7th Cir. 2004), in which the Seventh Circuit held that a district court had erred
12  in ordering a holding company based in Milwaukee to retrieve and turn over certain documents in
13  the possession of its Australian subsidiaries for use in Australian court proceedings. *Id.* at 403-06.
14  Judge Ryu noted "numerous factual differences" between Ms. de Leon's application and the
15  application in *Kestrel*, *e.g.*, that the Seventh Circuit did not address the key question of whether a
16  court can order a domestic corporation to produce those records that it has a right to demand from
17  its foreign subsidiaries. Order at 10 (citing *In re De Leon*, No. 1:19-mc-15, 2020 U.S. Dist.
18  LEXIS 42968, at *12-13 (S.D. Ohio Mar. 12, 2020)). Intervenors argue that Judge Ryu did not
19  address the fact that the true targets of the subpoena (be they Intervenors or Clorox's subsidiaries,
20  Clorox Cayman and Clorox International) are not located in this judicial district, and the Order
21  therefore "placed the cart before the horse" when it found *Kestrel* inapposite. Mot. at 15. In other
22  words, Intervenors do not dispute that Clorox is "found in" the Northern District of California for
23  purposes of § 1782(a), but instead argue that the "true targets" of her subpoenas (*i.e.*, the Saudi-
24  based joint venture entities) reside outside this district. *Id.* at 14.
25      This "true target" argument misses the mark. Whether Clorox *should* have been served
26  with the subpoena is not dispositive under § 1782(a), which authorizes discovery to proceed in
27  accordance with the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a). The Federal
28  Rules of Civil Procedure require a subpoenaed party to produce those records in its "possession,

7

1  custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Control is defined as "the legal right to
2  obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d at 1107 (citing *United States*
3  *v. International Union of Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir. 1989)).
4  That a party in a suit may be able otherwise to obtain the documents does not gainsay the fact that
5  the subpoenaed party possesses such documents. Intervenors do not dispute that the information
6  from Clorox's subsidiaries is in Clorox's possession, custody, or control. *Cf. In re de Leon*, 2020
7  U.S. Dist. LEXIS 42968 at *10 ("on the Court's review, P&G is not a 'wrong target[]' [of Ms. de
8  Leon's § 1782(a) discovery application] … [because] P&G has either the actual
9  possession/custody of or the right to demand (from [its foreign subsidiary]) at least some of the
10  requested discovery").

11  Thus, Judge Ryu properly found that Ms. de Leon had met the "found in" requirement of §
12  1782(a), under either a *de novo* or clearly erroneous standard.

13      2.    <u>§1782(a)'s "for use" requirement</u>

14  Next, Intervenors argue that Ms. de Leon does not seek evidence "for use" in a foreign
15  tribunal because the proceedings in Saudi Commercial Court have "effectively concluded." Mot.
16  at 12 (citing *Khrapunov*, 931 F.3d at 925-26). Intervenors note that many of Ms. de Leon's
17  subpoena requests are relevant only to the California RICO Action. Mot. at 13-14.

18  There is no convincing reason to believe that Ms. de Leon issued the § 1782(a) subpoenas
19  for use in a domestic, as opposed to a foreign, proceeding. The California RICO Action has been
20  stayed since July 2019 pending the outcome of the valuation process in the Saudi actions. *See*
21  Order at 11. At present, there is no indication that Ms. de Leon seeks to use the requested
22  discovery in that suit. Further, the parties stipulated to a protective order by which all materials
23  produced by Clorox "shall be used only for this proceeding and for the cases related to the estate
24  of Sheikh Osama in the Commercial Court of Jeddah, Kingdom of Saudi Arabia … the immediate
25  appeal of that case, and any new case directly challenging the valuation … [and] shall not be used
26  by the Petitioner for any other purpose, including … the pending litigation between Petitioner and
27  Intervenors in the United States District Court for the Central District of California." Docket No.
28  64, ¶ 6. Thus, Ms. de Leon is precluded from using the requested discovery in the California

8

1  RICO Action.

2  Further, even though some of the discovery requests relate solely to the California RICO
3  Action, the Saudi Commercial Court appointed Deloitte to conduct its valuation of AGC
4  independently, and Ms. de Leon has exercised her appeal rights to challenge the accuracy of
5  Deloitte's valuation. *See* Order at 13; Opp. at 12-13. Thus, the Saudi proceedings have not been
6  concluded, and Ms. de Leon seeks documents from Clorox that are relevant to her challenge to the
7  valuation therein. Communications about the California RICO Action may be directly relevant to
8  Ms. de Leon's appeal in Saudi Commercial Court, because the California RICO Action alleges
9  fraud in the valuation of the Abudawood Group. *See de Leon v. Ayman Ismail Abudawood*, No.
10 8:18-cv-01030-JLS-JDE, 2018 U.S. Dist. LEXIS 224784, at *2 (C.D. Cal. Oct. 23, 2018) ("[t]he
11 Complaint alleges that the brothers wrongfully took control of the distribution of Sheik Osama's
12 estate and have fraudulently tried to delay disbursement of the inheritance to which Plaintiffs [Ms.
13 de Leon and her minor daughter] are entitled … [r]ather than distribute to Plaintiffs the fair market
14 value of Sheikh Osama's estate as Anas and Ayman allegedly promised their brother they would
15 do, Plaintiffs claim that Anas and Ayman have used Plaintiffs' financial dependence on the
16 Abudawood Group to exert pressure on them to accept below fair market value for their interest in
17 the estate"). *Cf. In re de Leon*, 2020 U.S. Dist. LEXIS 42968 at *15 ("the California Litigation
18 involves some of the same buyout/valuation matters at issue in the Saudi Litigation … [and]
19 Petitioner will be able to place the requested discovery in front of the Saudi court by way of the
20 objections (if any) she chooses to file to Deloitte's valuation"). And, again, Ms. de Leon may only
21 use communications concerning the California RICO Action to further her appeal efforts in Saudi
22 Commercial Court, under the protective order which the parties stipulated to.

23 The Court finds that Judge Ryu correctly analyzed the requirements of § 1782 for Ms. de
24 Leon's discovery application even under a *de novo* review. The Court need not analyze the third
25 requirement (that the application be made by an "interested person") because Intervenors do not
26 dispute that Ms. de Leon is an interested person within the meaning of the statute. Order at 8.

27     3.    <u>Discretionary *Intel* factors</u>

28 The Court next analyzes Judge Ryu's application of the discretionary *Intel* factors. Judge

1    Ryu noted Intervenors' argument that the first *Intel* factor weighs in their favor because Ms. de
2    Leon really seeks discovery from Abudawood & Partners and National Cleaning, who are parties
3    to the Saudi Commercial Court proceedings through their parent company, Al Wafra.  Order at 12-
4    13.  However, she found this argument unconvincing because discovery is sought from the
5    Oakland-based Clorox as a means of independently verifying and ensuring the accuracy of
6    Deloitte's valuation.  *Id.* at 13.

7    Intervenors argue that Judge Ryu failed to meaningfully engage with the first factor, citing
8    *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP, 376 F.3d 79 (2d Cir. 2004), in which the Second
9    Circuit upheld a district court's denial of a § 1782 application and noted that the first *Intel* factor
10   weighed against the applicants, German investors in a German telecommunications corporation
11   seeking documents from a New York-based law firm for a German proceeding.  *Id.* at 85.  The
12   Second Circuit held that, although the § 1782 applicants nominally sought discovery from the
13   New York law firm, the true target was the German corporation, which had provided the sought-
14   after documents to the law firm pursuant to a protective order in a class action in a U.S. court.  *Id.*
15   The first *Intel* factor weighed against granting the § 1782 application because the true target (*i.e.*,
16   the German corporation) was a participant in the German litigation and subject to German court
17   jurisdiction, meaning that the need for § 1782 discovery assistance "is not as apparent as it
18   ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Id.*
19   (citing *Intel*, 124 S. Ct. at 2483).

20   *Schmitz* is inapposite.  In *Schmitz*, the German corporation was the focus of a criminal
21   investigation by German authorities, who testified that production of the documents to the § 1782
22   petitioners would compromise the investigation and infringe on German sovereignty.  *Id.* at 81-82.
23   The Second Circuit noted that the German government was "obviously unreceptive" to the
24   assistance of an American court, and that the second *Intel* factor therefore weighed against
25   granting the § 1782 application.  *Id.* at 84-85.  It also found, in light of the concerns expressed by
26   German authorities, that granting the § 1782 application would hinder the twin aims of the statute:
27   "providing efficient means of assistance to participants in international litigation in our federal
28   courts and encouraging foreign countries by example to provide similar means of assistance to our

1   courts." *Id.* at 84 (citing *Metallgesellschaft v. Hodapp (In re An Order Permitting*

2   *Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77, 79 (2d Cir. 1997)).

3         No such concerns underlie Ms. de Leon's application. To the Court's knowledge, the

4   Saudi Commercial Court is receptive to the evidence sought herein and has not lodged any

5   concerns about the discovery requested from Clorox. Further, Clorox is not a party to the

6   proceedings before the Saudi Commercial Court, and hence, the first *Intel* factor weighs in Ms. de

7   Leon's favor. *See* Order at 12-13. Further, in *Schmitz*, there was ample reason to believe that the

8   "true target" of the discovery request was the German corporation, because the § 1782 applicants

9   were 28 German investors who were suing that same corporation in German court. *Schmitz*, 376

10  F.3d at 81. For the reasons discussed *supra*, Intervenors' argument that Clorox is not the "true

11  target" of Ms. de Leon's discovery request is unavailing.

12        The second factor—the "nature of the foreign tribunal, the character of the proceedings

13  underway abroad, and the receptivity of the foreign government or the court or agency abroad to

14  U. S. federal-court judicial assistance"—was appropriately analyzed by Judge Ryu. *Intel*, 542

15  U.S. at 264. Intervenors contend that a § 1782 applicant must point to "particularized evidence"

16  that the foreign tribunal affirmatively seeks American judicial assistance, *e.g.*, a "request form the

17  foreign country or the existence of an international treaty between the United States and the forum

18  country." Mot. at 18 (citing *Saul v. Vesuvio S.A. (In re Int'l Judicial Assistance)*, No. 16-mc-

19  80204-JSC, 2016 U.S. Dist. LEXIS 134944, at *6 (N.D. Cal. Sep. 29, 2016) ("Argentina requested

20  the information, which makes clear that the Argentinian court is receptive to this Court's assistance

21  and that the request is not an attempt to circumvent proof-gathering restrictions in either Argentina

22  or the United States") and *In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016

23  U.S. Dist. LEXIS 152090, at *16 (N.D. Cal. Nov. 2, 2016) ("receptivity of a foreign court to U.S.

24  federal judicial assistance may be inferred from the existence of treaties facilitating such

25  cooperation")).

26        However, a foreign tribunal may be receptive to American judicial assistance without

27  lodging a formal request for that assistance. *See*, *e.g.*, *In re Komanokai*, No. 4:20-mc-80149-

28  KAW, 2020 U.S. Dist. LEXIS 211774, at *6 (N.D. Cal. Nov. 12, 2020) (holding that the second

*Intel* factor "considers whether the foreign tribunal is willing to consider the information sought" by looking at, *e.g.*, "whether there is reliable evidence that the foreign tribunal would not make any use of the requested material") (internal quotation marks omitted); *In re Joint Stock Co. Raiffeisenbank*, 2016 U.S. Dist. LEXIS 152090 at *15 (under the second *Intel* factor, "courts look for authoritative proof that a foreign tribunal *would reject* evidence obtained with the aid of § 1782") (emphasis added; internal quotation marks omitted). As discussed *supra*, counsel for Ms. de Leon states that new evidence (which Clorox has possession, custody, or control of) is directly relevant to her appeal in Saudi Commercial Court regarding Deloitte's independent valuation. *See* Order at 13. There is no indication that such evidence would be rejected by the Saudi Court.

Further, the fact that the Saudi court concluded its proceedings "without even requesting the type of discovery Ms. de Leon now seeks through her Section 1782 Petition" is not indicative of a lack of receptivity. *See* Mot. at 18 n.7. As Judge Ryu noted, "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions … [and] [t]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use." Order at 13 (citing *Intel*, 542 U.S. at 261). In other words, there is an appeal in Saudi Commercial Court which appears to put a premium on the issue informed by the evidence sought by Ms. de Leon. Judge Ryu correctly analyzed the second *Intel* factor.

With respect to the third *Intel* factor, Intervenors claim that Judge Ryu failed to consider whether Ms. de Leon sought to circumvent the evidentiary restrictions in place in both Saudi Arabia and in the stayed California RICO Action. Mot. at 19. Intervenors cite non-binding caselaw which indicates that district courts may consider a party's failure to attempt discovery measures in the foreign jurisdiction as evidence of circumvention. However, as Judge Ryu correctly noted, "[t]here is no requirement that the party seeking discovery pursuant to section 1782 must first request discovery from the foreign tribunal." Order at 14 (citing *In re Republic of Kaz. for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015)). This is especially so where the evidence is sought from a foreign entity not a party to the proceeding. Judge Ryu correctly concluded the third factor does

not favor Intervenors.

The fourth *Intel* factor considers the intrusiveness and burden of the § 1782 discovery requests. *Intel*, 542 U.S. at 265. As Intervenors note, Judge Ryu analyzed this factor in the context of Clorox's motion to quash the subpoenas under Federal Rule of Civil Procedure 45. *See* Order at 14-16. Intervenors argue that the number of Ms. de Leon's requests in her § 1782 application are unduly intrusive and burdensome. Mot. at 20-21. In the Order, Judge Ryu noted that the parties had made progress on narrowing the scope of the subpoenas. Ms. de Leon agreed to withdraw 35 of the 101 RFP's, and the parties agreed that the deposition subpoena might not be necessary if the documents produced by Clorox cover the same topics; Judge Ryu directed Clorox to go through the remaining disputed RFP's to detail facts that make their production burdensome. Order at 15-16. Thus, Judge Ryu is ensuring the subpoena is not unduly burdensome.

The Court concludes its analysis by briefly addressing Intervenors' argument that Judge Ryu's order did not consider the purposes of § 1782. The statute's aims are twofold: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Advanced Micro Devices v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002). Intervenors argue that Judge Ryu's "interpretation of a Saudi judgement in order to grant discovery to support a collateral attack or appeal of that judgment is unlikely to encourage beneficial reciprocity from Saudi courts in the future." Mot. at 22. As Judge Ryu notes, Ms. de Leon has a right under Saudi law to appeal the initial valuation by Deloitte. *See* Order at 4 (citing 2d Hammad Decl. ¶¶ 6, 7) (Ms. de Leon's attorney "states that de Leon … ha[s] the right **under Saudi law** to appeal from the judgment and will appeal. On appeal, de Leon … may enter new evidence, if such evidence is material to the claim itself") (emphasis added; internal quotation marks omitted). Further, the Saudi Commercial Court will "revisit the valuation provided" by Deloitte on appeal and that valuation "may be amended" if the Saudi court finds in Ms. de Leon's favor and admits the new evidence obtained from Clorox. Order at 4 (citing 2d Hammad Decl. ¶ 8). There is nothing in the record which indicates that § 1782's aim of reciprocal evidentiary assistance between foreign and domestic courts will be hindered by Ms. de Leon's application.

13

In sum, Judge Ryu correctly analyzed the discretionary *Intel* factors and is affirmed even under *de novo* review.

### III.     CONCLUSION

Accordingly, the Court **DENIES** Intervenors' Motion for *De Novo* Determination of Dispositive Matter Referred to Magistrate Judge.

This order disposes of Docket No. 66.

**IT IS SO ORDERED**.

Dated: February 24, 2021

_____
EDWARD M. CHEN
United States District Judge